UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
JAMES BOLAND, *et al.*,           )
                Plaintiffs,       )
                                  )
        v.                        )
                                  )      Civil Action No. 12-00781 (ABJ/AK)
SOUTHERN MINNESOTA                )
MASONRY, INC.,                    )
                Defendant.        )
_____ )

## MEMORANDUM OPINION

Pending before the Court is Plaintiffs' Motion for Entry of Default Judgment and Incorporated Memorandum in Support Thereof ("Motion") [6] by Plaintiffs James Boland, Henry Kramer, Ken Lambert, Gerard Scarano, Timothy Driscoll, John J. Flynn, Gerald O'Malley, Eugene George, Robert Hoover, Matthew Aquiline, Gregory R. Hess, William McConnell, Charles Costella, John Trendell, and Fred Kinateder (collectively, "Plaintiffs") as Trustees of, and on behalf of, the Bricklayers & Trowel Trades International Pension Fund ("IFP"). No opposition to the Motion has been filed by Defendant Southern Minnesota Masonry, Inc. ("Defendant").[1]

## I. Background

The IPF is an "employee benefit plan" within the meaning of Section 3(3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1002(3), and a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. §1002(37). (Complaint [1] ¶3.)  *See generally* Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29

---

[1]Nor did Defendant file an Answer to the Complaint.

U.S.C. §1451. Plaintiffs, acting in their capacity as fiduciaries of and for the benefit of the

participants of the IPF, seek employer withdrawal liability under ERISA and pursuant to the

Withdrawal Liability Procedures adopted by the IPF pursuant to statute. (Motion at 2.); *see* 29

U.S.C. §1383(b).

On June 29, 2012, the Clerk of the Court made an Entry of Default [5] as to Defendant

Southern Minnesota Masonry, Inc.  On August 9, 2012, Plaintiffs filed their Motion for Entry of

Default Judgment [6], including affidavits in support of the default judgment sum requested.

That Motion was referred to a United States Magistrate Judge for determination pursuant to

LCvR72.2(a) [7]. This Court held an evidentiary hearing on the Motion on October 9, 2012, at

which time Plaintiffs presented a witness to attest to the outstanding withdrawal liability.[2]

Defendant did not appear at the hearing nor did Defendant proffer any evidence disputing the

requested sum prior to the hearing.

## II. Legal Standard for Default Judgment

The clerk of the court must enter a default "[w]hen a party against whom a judgment for

affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by

affidavit or otherwise."  Fed. R. Civ. P. 55(a).  Where the plaintiff's claim is not for a sum

certain, the party must apply to the court for a default judgment.  Fed. R. Civ. P. 55(b)(2).  "The

determination of whether default judgment is appropriate is committed to the discretion of the

trial court."  *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F.

Supp. 2d 56, 57 (D.D.C. 2008) (citing *Jackson v Beech*, 636 F. 2d 831, 836 (D.C. Cir. 1980)).

---

[2]The Court's docket reflects that there is no counsel of record for the Defendant. A copy
of the Motion [6] and Notice of the Hearing was mailed to Karen Ball, the owner and treasurer of
Defendant.  The Motion was sent by first class mail and the Notice was sent by certified mail,
return receipt requested.

The standard for default judgment is satisfied where the defendant makes no request to set aside the default and no suggestion that it has a meritorious defense.  *J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d 109, 113 (D.D.C. 2011).

Upon entry of default by the clerk of the court, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint."  *U.S. v. Bentley*, 756 F. Supp. 2d 1,3 (D.D.C. 2010) (citation omitted).  The court must then make a determination of the sum to be awarded.  *Id.*  "[T]he court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment."  *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, Inc.*, 239 F. Supp. 2d 26, 30 (D.D. C. 2002) (citation omitted)*,*

Under ERISA, a pension fund which has obtained liability against a delinquent employer may seek damages of (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages as provided in the pension plan but not exceeding 20 percent of the unpaid contributions; (4) reasonable attorneys fees and costs; and (5) other legal or equitable relief that the court finds appropriate. 29 U.S.C. §1132(g)(2).

### III. Analysis of the Sum Claimed by Plaintiffs

#### A. Employer Withdrawal Liability

Withdrawal liability requires an employer who withdraws from a multiemployer pension plan to contribute its proportionate share of the plan's unfunded vested liabilities.  29 U.S.C.§1381.  The purpose of withdrawal liability is to protect the remaining employers in a pension plan from having to cover for a withdrawn employer or risk not being able to pay the full amount of benefits promised to employees.  *See Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Co.*, 513 U.S. 414, 416-17 (1995).  A company that "permanently

ceases all covered operations under the plan" completely withdraws from the plan.  29 U.S.C.

§1383(a)(2).

Attached to Plaintiffs' Motion as Exhibit A is a Declaration ("Decl.") by David F. Stupar

("Stupar"), the Executive Director of the IPF (or "the Fund"), a multiemployer benefit plan with

benefits "funded by contributions from participating employers" which "provides pension and

other benefits to employees who work in the construction industry . . . ."  (Stupar Decl. ¶¶2, 3.)

Stupar indicates that:

> Under the MPPAA and the EWL Procedures [Withdrawal Liability Procedures adopted
> by the Trustees of the Fund], a participating employer is deemed to have withdrawn from
> the Fund when the Fund determines that the employer ceases to have an obligation to
> contribute to the Fund and has continued to perform work in the jurisdiction of the
> collective bargaining agreement of the type for which contributions were previously
> required.

(Stupar Decl. ¶5.)  In the instant case, the Defendant Southern Minnesota Masonry employed

members of the Bricklayers and Allied Craftworkers International Union in connection with the

execution of a collective bargaining agreement with an affiliate of the Bricklayer & Trowel

Trades International Union.  (Stupar Decl. ¶¶7-8.)

According to Stupar, "[t]he Fund determined that [Defendant] withdrew from the Fund in

2010 because its collective bargaining agreement terminated on April 30, 2010, and [Defendant]

continued to perform the same kind of work it formerly carried out under the collective

bargaining agreement in the same geographic area."  (Stupar Decl. ¶10); *see* 29 U.S.C.

§1383(b)(2).[3]  This information was provided by the Fund to its actuary, Cheiron Company

---

[3]The Fund sent a Notice of Withdrawal Liability to Defendant on November 15, 2011,
but Defendant failed to make any interim payments.  (Stupar Declaration ¶11; *see* Attachment 3
to Exh. A.)  The Fund subsequently sent a March 9, 2012 letter to Defendant indicating that if no
interim payment was made within sixty days, the Fund would be entitled to file a legal action.
(Stupar Declaration ¶12; *see* Attachment 4 to Exh. A.)

("Cheiron") and Cheiron was instructed to determine the withdrawal liability owed by Defendant to Plaintiffs.  (Stupar Decl. ¶10); *see* 29 U.S.C. §1382.  The Cheiron calculation is set forth as Attachment 2 to Exhibit A.

At the evidentiary hearing, Plaintiffs presented Peter Hardcastle ("Hardcastle"), Principal Consulting Actuary with Cheiron, to testify as to the procedure he used and results he obtained in  calculating withdrawal liability totaling $193,860,00.  *See also* Stupar Decl. ¶17 ("Defendant owes the Fund $193,860.00 representing full Withdrawal upon a default under 29 U.S.C. §1399(c)(5).")  Hardcastle's June 14, 2011 letter to Craig Weir, Bricklayers & Trowel Trades International Pension Fund, with his calculations attached was admitted as Plaintiffs' Exhibit 1 at the hearing.  Hardcastle's letter indicates that a May 2010 date of withdrawal was used. (Hearing Exh. 1.)  Hardcastle testified at the hearing that the total liability would be the same using any withdrawal date in 2010, which was the year provided by the Fund.

Upon consideration of the Stupar Declaration and the testimony by Peter Hardcastle, the Court grants withdrawal liability in the requested amount of $193,860.00.

### B. <u>Interest and Liquidated Damages</u>

Withdrawal liability, similar to delinquent contributions, is subject to interest and liquidated damages. Pursuant to 29 U.S.C. §§1451(b) and 1132(g)(2)(B), Plaintiffs have calculated interest in the amount of $15,615.00, "at a rate of 15 percent per annum, from one day after the due date of the first interim payment in Defendant's payment schedule through July 31, 2012." (Stupar Decl. ¶18.)  Pursuant to 29 U.S.C. §§1451(b) and 1132(g)(2)(c), the amount of liquidated damages owed by Defendant is $38,772.00, which is calculated "at a rate of 20 percent of the Withdrawal Liability."  (Stupar Decl. ¶19.)

The Court grants Plaintiffs' claim for interest in the amount of $15,615.00 and liquidated damages in the amount of $38,772.00, which were calculated in accordance with the applicable ERISA provisions.

## C. Attorney's Fees and Costs

Plaintiffs assert that attorney's fees are recoverable under 29 U.S.C. §§1451(b) and 1132(g)(2)(D) and that such attorney's fees total $6,057.00.  (Stupar Decl. ¶22.)  *See also* Declaration of Ira R. Mitzner ("Mitzner") in support of Motion, attached as Exh. B.[4]  Plaintiffs claim entitlement to reimbursement of $532.00 in costs, consisting of a $350.00 court fee and service of process costs in the amount of $182.00.  29 U.S.C. §§14519b) and 1132(g)(2)(D).  (Stupar Decl. ¶¶20-21.)  Upon consideration of the Stupar and Mitzner Declarations, this  Court grants Plaintiffs' requests for legal fees in the amount of $6,057.00 and costs of $532.00.

## IV. Conclusion

For the foregoing reasons, this Court grants Plaintiffs' Motion for Entry of Default Judgment [6].

A separate Order of Judgement will accompany this Opinion.


Date: October 17, 2012                     _____/s/_____
                                           ALAN KAY
                                           UNITED STATES MAGISTRATE JUDGE

---

[4]Mitzner is "lead counsel representing IPF in this litigation, a partner with Dickstein Shapiro, and head of the ERISA Litigation Practice."  (Mitzner Declaration ¶9.)